<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INFUCARE RX, INC.,<br><br>        *Plaintiff,*<br><br>v.<br><br>SAJAL ROY, ROY INVESTMENT GROUP, LLC, SOLEO HEALTH HOLDINGS, INC., HAROLD E. CANNON, SOUTH WALTON PHARMACY, LLC D/B/A SANTA ROSA PHARMACY, and DAN A. ROBIN, SR.<br><br>        *Defendants.* | Case No.: 2:22-cv-6342-JKS-CLW<br><br>**OPINION**<br><br>October 22, 2024 |

**SEMPER**, District Judge.

    Before the Court are two motions. The first is Defendant Dan A. Robin, Sr.'s ("Robin") motion to dismiss Plaintiff InfuCare Rx, Inc.'s ("Plaintiff" or "InfuCare") Second Amended Verified Complaint[1] pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (ECF 186-1, "Robin MTD.")[2] The second is InfuCare's motion to dismiss or strike Defendant Sajal Roy's ("Roy") Amended Counterclaims[3] pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). (ECF 227, "InfuCare MTD.")[4] The Court reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant Robin's motion to dismiss is **GRANTED**, and Plaintiff InfuCare's motion to dismiss or strike is **GRANTED in part and DENIED in part.**

---

[1] (ECF 174, "SAVC.")
[2] InfuCare filed an opposition brief. (ECF 214 "InfuCare Opp.") Robin filed a reply. (ECF 225 "Robin Reply.")
[3] (ECF 216, Amended Counterclaims, "ACC.")
[4] Roy filed an opposition brief. (ECF 246, "Roy Opp.") InfuCare filed a reply. (ECF 248, "InfuCare Reply.")

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

    **A.  Facts from InfuCare's Second Amended Verified Complaint**

    Plaintiff InfuCare is a New Jersey corporation in the business of specialty pharmaceutical services and treatments in a non-hospital setting. (SAVC ¶¶ 28-29.) Defendant Roy is a licensed pharmacist who resides in Louisiana. (*Id.* ¶ 33.) On November 30, 2018, InfuCare purchased Roy's specialty pharmacy business, Factor One Source Pharmacy, LLC ("Factor One"). (*Id.* ¶¶ 66-67.) Following the sale of Factor One to InfuCare, Roy served as InfuCare's Vice President of Operations and Chief Business Development Officer. (*Id.* ¶ 88.) As part of the Factor One sale, Roy entered into a Restrictive Covenants Agreement ("RCA") with InfuCare, which, among other things, provided Roy would not engage in competition with InfuCare or solicit its employees, managers, officers, or customers. (*See* ECF 174-1, RCA § 3(a), (b).) These restrictions would remain in effect until "a period ending on the fifth (5th) anniversary of the Closing Date[,]" of November 30, 2018. (*Id.* § 2(b).) Roy also entered into an employment agreement with InfuCare. (SAVC ¶¶ 86-89.) The employment offer letter included a schedule of Employment and Post Termination Covenants ("Schedule A") that contained additional non-solicitation and non-competition provisions that would last for the duration of Roy's employment at InfuCare and for eighteen months following the end of his employment. (ECF 174-1, Ex. B, Schedule A §§ 3, 4.)[5]

    Disagreements between the parties led to Roy's resignation from InfuCare, which was effective on March 4, 2021. (SAVC ¶ 126.) In May or July of 2022, Roy began working for Defendant Soleo Health Holdings, Inc. ("Soleo"), a direct competitor of InfuCare in the specialty pharmacy, home infusion, bleeding disorders, and Intravenous Immunoglobulin (IVIG) markets.

---

[5] Schedule A also contains a provision that provides "[t]he restrictive covenant time periods set forth above shall be tolled during any period of noncompliance by you and/or in the event of litigation until the issuance of an injunction or entry of final judgment in favor of the Company, whichever is longer." (ECF 174-1, Ex. B, Schedule A § 6.)

(*Id.* ¶¶ 17-18.) InfuCare alleges this employment violated Roy's restrictive covenants. (*Id.*) Furthermore, InfuCare asserts Roy's involvement with Defendant South Walton Pharmacy, LLC d/b/a Santa Rosa Pharmacy ("Santa Rosa") also violated the restrictive covenants. (*Id.* ¶¶ 12-17.) Specifically, InfuCare alleges Roy violated his non-solicitation and non-competition obligations by soliciting InfuCare customers for Soleo and recruiting former InfuCare employees to work for Santa Rosa. (*Id.* ¶ 21.)

### a.  Allegations Related to Defendant Robin

Defendant Dan A. Robin, Sr. is a registered lobbyist with the State of Louisiana who resides at 206 E. 19th Avenue, Covington, Louisiana 70433. (SAVC ¶ 44.) Until December 2022, Robin was listed as the 100% owner of Santa Rosa. (*Id.* ¶ 45.) Santa Rosa is a Florida limited liability company with its principal place of business at 2050 W. County Highway 30a, Unit M1-106, Santa Rosa Beach, Florida 32459. (*Id.* ¶ 43.) Robin is not a pharmacist by training, and he allegedly lacks the finances, operational expertise, and marketing or sales knowledge to run or operate a national specialty pharmacy business that competes with InfuCare. (*Id.* ¶ 46.) He does not have any obvious connection to Santa Rosa, Florida. (*Id.*) InfuCare asserts that Roy provided for or aided in the purchase of Santa Rosa. (*Id.* ¶ 150.) Upon information and belief, InfuCare alleges Roy used Robin as a strawman purchaser to avoid the appearance of impropriety and the breach of his restrictive covenants. (*Id.*)

During Robin's ownership of Santa Rosa, Santa Rosa hired Amanda Bercey, a former InfuCare employee who is subject to, and allegedly violated, restrictive covenants relating to non-competition, non-solicitation, and confidentiality. (*Id.* ¶ 55.) Further, during Robin's ownership of Santa Rosa, and almost immediately after hiring Bercey, Santa Rosa became licensed to dispense

medication in the state of New Jersey, effective on or about November 1, 2021, ostensibly for the purpose of competing with InfuCare in New Jersey. (*Id.*)

InfuCare asserts Robin knew or should have known that his conduct in aiding both Roy and Bercey to violate their contractual post-separation obligations to InfuCare and directing and/or assisting Santa Rosa to be licensed in New Jersey to compete with InfuCare would harm InfuCare, a New Jersey-based business. (*Id.* ¶ 57.) InfuCare alleges Robin has spoken to its employees repeatedly since InfuCare's purchase of Factor One, including speaking to Roy during his tenure as an officer and board member of InfuCare. (*Id.* ¶ 58.) InfuCare asserts Robin knew or should have known that InfuCare's principal place of business was in New Jersey. (*Id.* ¶ 59.) The SAVC asserts claims for tortious interference (Counts VIII, IX, XII) and civil conspiracy (Count XVI) against Robin. (*Id.* ¶¶ 278-96, 366-76.)

### B. Facts from Roy's Amended Counterclaims

In 2004, Roy received his Doctor of Pharmacy from the University of the Sciences in Philadelphia. (ECF 216, Amended Counterclaims "ACC" ¶ 17.) After receiving his degree, he was required to take multiple exams before becoming licensed, including the North American Pharmacist Licensure Examination (NAPLEX) and the Multistate Pharmacy Jurisprudence Examination (MPJE). (*Id.* ¶ 18.) Roy has the following licenses and certifications: (a) Board Certified Patient Safety Officer by the International Board for Certification of Safety Managers; (b) Certified Geriatric Pharmacist by the Specialty Pharmacy Certification Board; and (c) Certified Specialty Pharmacist by the Specialty Pharmacy Certification Board. (*Id.* ¶ 19.) He is also a licensed pharmacist in twenty-two states. (*Id.*)

In 2014, Roy founded Factor One, and in 2017, Factor One bought Fast Access Specialty Therapeutics ("FAST"). (*Id.* ¶ 20.) Following the purchase of FAST, Roy became the Chief

4

Executive Officer of both Factor One and FAST as well as the pharmacist in charge of its Louisiana location. (*Id.*) On or about November 30, 2018, InfuCare purchased Factor One and FAST. (*Id.* ¶ 21.) As part of the purchase, Roy received partial payment, and the remainder of the purchase price was paid in rollover stock ownership in InfuCare. (*Id.*) As part of this transition and Roy's onboarding at InfuCare, it was understood that he would be a valued member of InfuCare's leadership team. (*Id.*)

Following the acquisition, Roy was hired as Vice President of Operations (Pharmacy) at InfuCare, but also had a role helping to oversee hemophilia sales and assist with other projects, including business development. (*Id.* ¶ 22.) His role as Vice President of Operations was limited to the prior Factor One locations, and Roy was not allowed to have any interaction with the prior InfuCare sites. (*Id.*) After his arrival at InfuCare, Roy expressed concern about certain business practices. (*Id.* ¶ 23.) InfuCare did not address Roy's concerns and instead, in November 2020, transferred Roy to a newly created role as Chief Business Development Officer. (*Id.*) Thereafter, Roy's job responsibilities were reduced. (*Id.*) Because he was not deemed a "team player," Roy was never part of InfuCare's inner circle of executives, and he had very limited access to InfuCare's confidential information, beyond patient-related information. (*Id.* ¶ 24.)

Roy had several concerns about InfuCare's operations that ultimately led to his resignation on January 18, 2021. (*Id.* ¶ 29.) On March 15, 2021, Roy filed a lawsuit in the Superior Court of New Jersey, Essex County, Chancery Division, captioned *Roy v. InfuCare RX Inc., et al.*, Docket No. ESX-C-0043-21, in which Roy sought books and records and the appointment of an independent, disinterested director to oversee an independent investigation of his concerns. (*Id.* ¶ 32.) On April 15, 2021, InfuCare agreed to a settlement, and the parties agreed to a complete separation (the "Separation"). (*Id.* ¶ 33.) As part of the agreed-upon Separation, the parties entered

a "Separation Agreement" and agreed that InfuCare would redeem Roy's prior rollover investment into InfuCare (the "Purchase Agreement"). (*Id.*) Roy agreed to accept the purchase price because, among other reasons, he sought to ensure he was no longer connected to or affiliated with InfuCare. (*Id.* ¶ 34.) While the settlement contained a release of any potential wrongdoing by InfuCare that led Roy to seek the Separation, Roy alleges there was no release of claims arising out of breaches of the Separation, including the Separation Agreement and/or the Purchase Agreement. (*Id.*) He also asserts that the release did not cover things that occurred after the parties' entry into the Separation Agreement and Purchase Agreement. (*Id.*)[6]

To have an operating pharmacy, state boards of pharmacy require a pharmacy to name a pharmacist whose license is in good standing in that state as the pharmacist in charge ("PIC"). (*Id.* ¶ 12.) If the pharmacy does not have a PIC, it is unable to sell pharmaceutical products in a state requiring a PIC. (*Id.* ¶ 13.) Likewise, if the pharmacy does not identify a PIC with a governmental or commercial payor like Medicare or a private insurance company, the pharmacy cannot receive reimbursement from the governmental or commercial payor. (*Id.*) States require that pharmacies take certain steps when there is a change in designated PIC. (*Id.* ¶ 16.) When a PIC leaves a pharmacy, state boards of pharmacy may require the pharmacy to replace the PIC within a certain number of days. (*Id.* ¶ 40.)

Roy was listed as the PIC and/or specialty pharmacist for InfuCare with at least the following state boards of pharmacies, government payors, and/or commercial payors: Aetna Specialty Pharmacy, Alabama Board of Pharmacy, Alabama Medicaid, Arkansas Board of Pharmacy, CareFirst BlueCross BlueShield, CareSource Specialty Pharmacy, Centers for

---

[6] The Purchase Agreement provides that "[i]f any Party incurs any attorneys' fees or costs, or other litigation expenses in any action for enforcement of this Agreement, then the Party prevailing in such enforcement action shall be entitled to reimbursement from the non-prevailing Party for all such fees, costs and expenses." (ACC ¶ 35.) The Separation Agreement also contains an attorney's fee provision. (*Id.* ¶ 36.)

Medicare and Medicaid Services Guam Board of Pharmacy, Guam Medicaid, Kansas Board of Pharmacy, Kansas Medicaid, Kentucky Board of Pharmacy, Kentucky Medicaid, Louisiana Blue Cross and Blue Shield, Maryland Board of Pharmacy, Maryland Medicaid, Oklahoma Board of Pharmacy, Oklahoma Medicaid, OptumRx Specialty Pharmacy, Prime Therapeutics Specialty Pharmacy, and Texas Board of Pharmacy. (*Id.* ¶ 43.) Roy asserts that as part of the agreed upon Separation from InfuCare, InfuCare "either expressly or at least implicitly agreed" that it would take the necessary steps to remove and/or ensure the removal of Roy as the PIC and/or specialty pharmacist with all state boards of pharmacy as well as all governmental and commercial payors where Roy was listed as such. (*Id.* ¶ 42.)

Roy requested documentation from InfuCare regarding his removal as the PIC and/or specialty pharmacist with state boards of pharmacies, governmental payors, and/or commercial payors, including the date of his removal. (*Id.* ¶ 44.) As of April 28, 2023, the Tennessee Board of Pharmacy had not received notification from InfuCare of Roy's resignation, and he was still listed as InfuCare's PIC more than two years after the Separation. (*Id.* ¶ 45.) Plaintiff asserts that Tennessee law requires that a pharmacy notify the Tennessee Board of Pharmacy immediately of the resignation of its PIC by submitting a change of pharmacist form. (*Id.*) Roy did not learn of InfuCare's failure to remove him as its PIC with the Tennessee Board of Pharmacy until after the commencement of the instant litigation. (*Id.* ¶ 46.) Similarly, despite the Separation from InfuCare, the Guam Board of Pharmacy listed Roy as InfuCare's PIC through August 2021. (*Id.* ¶ 47.) The Guam Board of Pharmacy requires that a pharmacy notify the Guam Board of Pharmacy regarding the change of any PIC. (*Id.*) The Guam Board of Pharmacy is authorized to suspend, revoke, deny, or refuse to renew the license of any pharmacy that fails to comply with this notification requirement. (*Id.*) Roy did not learn of InfuCare's failure to timely remove him as its PIC with the

Guam Board of Pharmacy until after the commencement of the instant litigation. (*Id.* ¶ 48.) Further, on October 6, 2021, InfuCare entered into a consent order with the Alabama State Board of Pharmacy in which the Alabama State Board of Pharmacy found InfuCare failed to replace Roy as the Supervising Pharmacist. (*Id.* ¶ 49.) Upon information and belief, Roy alleges that following the Separation, InfuCare failed to timely remove and/or ensure Roy's removal as PIC and/or specialty pharmacist from other state boards of pharmacies as well as all governmental and commercial payors, including OptumRx Specialty Pharmacy. (*Id.* ¶ 50.)

Upon information and belief, Roy alleges that InfuCare's failure to timely remove and/or ensure Roy's removal as PIC and/or specialty pharmacist was motivated, in whole or in part, by continuity in InfuCare's pharmaceutical operations so that it could continue to service patients, and in turn, generate profit. (*Id.* ¶ 51.) Plaintiff asserts that InfuCare's misuse of Roy's pharmacy license and PIC status following the Separation enabled InfuCare to continue to provide services to patients and bill governmental payors and commercial payors for drugs, products, and/or services without compliance with board of pharmacy regulations and without disclosure to the payors. (*Id.* ¶ 52.)

Roy asserts four counterclaims against InfuCare: breach of the Purchase Agreement (Count One); breach of the Separation Agreement (Count Two); breach of the implied covenant of good faith and fair dealing (Count Three); and unjust enrichment (Count Four).

## II.    LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). "However, when the court does not hold

an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

Despite having all reasonable inferences drawn in its favor, the plaintiff cannot rely on the bare pleadings alone to defeat a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)). "A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether *in personam* jurisdiction actually lies." *Patterson*, 893 F.2d at 603 (citing *Time Share Vacation Club*, 735 F.2d at 67 n.9). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence . . . ." *Patterson*, 893 F.2d at 603-04.

### B.  Motion to Dismiss Counterclaims Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations

omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012); *see County of Hudson v. Janiszewski*, 351 F. App'x 662, 667 (3d Cir. 2009) ("Though we 'must accept all factual allegations in [the] complaint[, or in this case, the counterclaim,] as true, [] we are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." (alterations in original) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007))). Under this standard, the counterclaim must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a counterclaim, the court must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court will, however, accept the counterclaim's well-pleaded facts as true. *Fowler*, 578 F.3d at 210.

On a Rule 12(b)(6) motion to dismiss, a district court may not consider information extraneous to the relevant pleading. *See* Fed. R. Civ. P. 12(d). Similarly, a motion to dismiss a counterclaim must be decided "on the face of the counterclaim." *Lukoil N. Am. LLC v. Turnersville Petroleum Inc.*, No. 14-3810, 2015 WL 5455648, at *1 (D.N.J. Sept. 16, 2015). However, in certain circumstances, a court may also consider undisputed and authentic exhibits as well as

matters of public record. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997).

### C. Motion to Strike Pursuant to Rule 12(f)

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are decided on the pleadings alone." *Deery v. Crystal Instr. Corp.*, No. 13-198, 2013 WL 4517867, at *1 (D.N.J. Aug. 26, 2013) (citations omitted). Importantly, motions to strike are generally disfavored and granted sparingly, such as when a defense is clearly insufficient regardless of any disputed issues of fact. *See Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217-18 (D.N.J. 1993). "Even where the facts are not in dispute, Rule 12(f) is not meant to afford an opportunity to determine disputed and substantial questions of law." *Id*. at 218 (citations omitted). The Court exercises wide discretion in considering a Rule 12(f) motion to strike. *Id.* at 217.

## III.    ANALYSIS

### A. Robin's Motion to Dismiss for Lack of Personal Jurisdiction

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state[]" so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotation marks omitted). The inquiry involves a two-step process: first looking to the state requirements and then to the constitutional requirements. *IMO Indus., Inc. v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998). In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht*

*Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not 'offend traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *International Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe*, 326 U.S. at 320).

"[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King*, 471 U.S. at 474 (citing *International Shoe*, 326 U.S. at 316). A defendant must have "'fair warning'" that its conduct will subject it to the jurisdiction of a foreign court. *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)). A defendant's conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Once a plaintiff demonstrates a prima facie case of personal jurisdiction by establishing minimum contacts, the burden shifts to the defendant. In fact, once minimum contacts have been shown, jurisdiction is "presumptively constitutional." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 324 (3d Cir. 2007). A defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If a defendant is subject to a forum's general jurisdiction, he or she can be sued there on any matter. *Id*. If, however, a defendant is solely subject to specific jurisdiction, he or she may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id*. InfuCare does not challenge Defendant Robin's assertion that this Court lacks general personal jurisdiction.[7] Accordingly, the Court will address whether it may exercise specific personal jurisdiction over Robin.

### i.    Specific Jurisdiction[8]

Defendant Robin argues the SAVC fails to establish that InfuCare's claims against him arise out of or relate to any contacts he had with New Jersey. (Robin MTD at 10.) InfuCare argues its allegations are sufficient to establish that Robin directed tortious activities at InfuCare in New Jersey such that this Court may exercise personal jurisdiction over him. (InfuCare Opp. at 7-12.)

"Specific" or "case-linked" jurisdiction depends on an affiliation between the forum state and the defendant's "suit-related conduct." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "Specific

---

[7] "General (or 'all-purpose') jurisdiction permits a court to hear any and all claims against a defendant brought within a certain forum, even if those claims have nothing to do with any actions the defendant took in the forum." *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022) (citing *Goodyear*, 564 U.S. at 923). The sweeping "breadth" of such jurisdiction imposes one "correlative limit." *Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*, 592 U.S. 351, 358 (1945). The question is whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984); *International Shoe*, 326 U.S. at 317. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924 (citation omitted). Here, Robin's domicile is Louisiana. Plaintiff sets forth no facts to establish that this Court may exercise general personal jurisdiction over Robin.

[8] Courts often assess specific jurisdiction on a claim-by-claim basis. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 n.3 (3d Cir. 2007) (citing *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001)). However, "it may not be necessary to do so" for certain factually overlapping claims. *O'Connor*, 496 F.3d at 317 n.3 (quoting *Remick*, 238 F.3d at 255-56.) Here, the same set of facts form the basis for each of InfuCare's claims against Robin. Therefore, the Court will not address specific jurisdiction on a claim-by-claim basis.

jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414-15 n.9). "A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Burger King*, 471 U.S. at 475 n.18). But "[t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 592 U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, the defendant must have "purposefully directed [its] activities at the forum." *Id.* (internal quotation marks omitted).[9] The "purposefully directed" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person[.]" *Id.* (internal quotation marks omitted) (citing *Keeton*, 465 U.S. at 774; *World-Wide Volkswagen Corp.*, 444 U.S. at 299; *Helicopteros*, 466 U.S. at 417). "Second, the plaintiff's claims 'must also arise out of or relate to' the defendant's activities." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (quoting *O'Connor*, 496 F.3d at 317); *see also Helicopteros*, 466 U.S. at 414. "And third, exercising personal jurisdiction must not 'offend traditional notions of fair play and substantial justice.'" *Danziger*, 948 F.3d at 130 (quoting *O'Connor*, 496 F.3d at 317); *see also International Shoe*, 326 U.S. at 316.

First, the Court assesses whether Robin purposefully directed his activities at the forum, New Jersey. Upon information and belief, InfuCare asserts that Roy used Robin as a strawman

---

[9] This factor has also been characterized as "purposeful availment," and focuses on contact that the defendant itself created within the forum state. *Burger King*, 471 U.S. at 475.

purchaser to avoid the appearance of impropriety and breach of Roy's restrictive covenants. (SAVC ¶ 150.) InfuCare explains that during Robin's ownership of Santa Rosa, *Santa Rosa* hired Amanda Bercey, a former InfuCare employee. (*Id.* ¶ 55.) Further, during Robin's ownership of Santa Rosa, *Santa Rosa* became licensed to dispense medication in the state of New Jersey, effective on or about November 1, 2021, ostensibly for the purpose of competing with InfuCare in New Jersey. (*Id.*) These allegations, however, pertain to Santa Rosa's actions, not Robin's actions, allegedly directed at the forum. "[A]ctions taken in the forum by the corporate entity should not be imputed to an individual defendant for purposes of personal jurisdiction unless the plaintiff establishes that the individual defendant himself took the specific action." *Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 553 (D.N.J. 2018) (quoting *Norben Import Corp. v. Metro. Plant & Flower Corp.*, No. 05-54, 2005 WL 1677479, at *5 (D.N.J. July 15, 2005)). Accordingly, these allegations are insufficient to establish that Robin purposefully directed his activities at the forum.

InfuCare further alleges Robin spoke to InfuCare's employees repeatedly after InfuCare's purchase of Factor One, including speaking to Roy during his tenure as an InfuCare officer and board member. (SAVC ¶ 58.) InfuCare does not specify the nature of these communications, explain whether these communications were initiated by Robin, note whether the communications were made in Robin's personal or corporate capacity, or indicate that these communications gave rise to the claims at issue here. Regardless, "[a]s a general rule, an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity." *Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 552 (D.N.J. 2018) (quoting *Collins v. James W. Turner Constr., Ltd.*, No. 16-2877, 2017 WL 210236, at *8 (D.N.J. Jan. 18, 2017) (citation omitted)). These general allegations about

Robin's communications are not enough to establish that Robin purposefully directed his activities at the forum. Accordingly, because InfuCare has failed to establish the first prong, InfuCare has failed to satisfy the traditional three-part test for establishing specific personal jurisdiction.[10]

In addition to the above-cited three-part test of specific jurisdiction, the Supreme Court has established a second analysis applicable to personal jurisdiction with respect to intentional tort claims.[11] In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court outlined an "effects" test of specific jurisdiction that places emphasis upon the effects of a defendant's actions in the forum state. The Third Circuit determined that *Calder* permits a plaintiff to establish personal jurisdiction with respect to intentional torts if the following three elements are satisfied:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (quoting *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998) (footnote omitted)). If a plaintiff satisfies these three elements, known as the "effects test," a plaintiff can demonstrate a court's jurisdiction over a defendant even when a defendant's "contacts with the forum alone . . . are far too small to comport with the requirements of due process" under the traditional analysis. *Marten*, 499 F.3d at 297 (quoting *Imo Indus., Inc.*, 155 F.3d at 259). Only if the "expressly aimed" element of the effects test is met

---

[10] The Court therefore declines to address the second and third elements.

[11] "[T]he *Calder* test need only be invoked when a district court finds that a defendant lacks sufficient minimum contacts under the traditional test." *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 629 (E.D. Pa. 2015).

need Courts consider the other two elements. *Marten*, 499 F.3d at 297 (citing *Imo Indus., Inc.*, 155 F.3d at 266).

"To establish that the defendant 'expressly aimed' his conduct, the plaintiff has to demonstrate 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Marten*, 499 F.3d at 297-98 (quoting *Imo Indus., Inc.*, 155 F.3d at 266). If a plaintiff fails to show a defendant manifested behavior intentionally targeted at and focused on the forum, a plaintiff fails to establish jurisdiction under the *Calder* effects test. *Marten*, 499 F.3d at 298 (citing *Imo Indus., Inc.*, 155 F.3d at 265 (quoting *ESAB Group Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997))).

Here, InfuCare asserts "Robin knew or should have known that his tortious conduct in aiding both Roy and Bercey to violate their contractual post-separation obligations to InfuCare, direct and/or assist Santa Rosa in license itself in New Jersey to compete with InfuCare in New Jersey in violation of Bercey/Roy's covenants, would harm InfuCare, a New Jersey-based business." (SAVC ¶ 57.) InfuCare asserts Robin knew or should have known that InfuCare's principal place of business was in New Jersey. (*Id.* ¶ 59.) However, elsewhere in the SAVC, InfuCare asserts that Santa Rosa, not Robin, hired Amanda Bercey, a former InfuCare employee. (*Id.* ¶ 55.) InfuCare also alleges that during Robin's ownership of Santa Rosa, Santa Rosa became licensed to dispense medication in the state of New Jersey. (*Id.*) InfuCare fails to sufficiently allege that Robin expressly aimed tortious conduct at New Jersey. *See Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001) ("[S]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself . . . . The defendant must manifest behavior intentionally targeted at and focused on the forum for *Calder*

to be satisfied." (quoting *Imo Indus., Inc.*, 155 F.3d at 265)). Accordingly, InfuCare likewise fails to establish personal jurisdiction over Robin pursuant to the *Calder* effects test.

Robin's motion to dismiss for lack of personal jurisdiction is **GRANTED.**

### B.  InfuCare's Motion to Dismiss Roy's Counterclaims

#### a.  Breach of Contract (Counts One and Two)

In his Amended Counterclaims, Roy asserts two claims for breach of contract against InfuCare. In Count One, Roy alleges that InfuCare's failure to remove him as the PIC or specialty pharmacist for certain pharmacies was a breach of the Purchase Agreement. (ACC ¶¶ 55-63.) In Count Two, Roy alleges that InfuCare's failure to remove him as the PIC or specialty pharmacist for certain pharmacies was a breach of the Separation Agreement. (*Id.* ¶¶ 64-71.) Roy alleges that

> As part of the separation, InfuCare either *expressly or at least implicitly* represented and agreed that following the execution of the Separation Agreement and Purchase Agreement, it would advise all state boards of pharmacy as well as all Federal, State, governmental and commercial payors of Dr. Roy's departure from InfuCare and remove him as InfuCare's Pharmacist in Charge ("PIC") and/or specialty pharmacist. It further either *expressly or at least implicitly* agreed it would ensure his removal as PIC and/or specialty pharmacist with all boards of pharmacy as well as all governmental and commercial payors following entry of these agreements.

(*Id.* ¶ 5 (emphasis added).) InfuCare argues both breach of contract claims must be dismissed because no provision in the Separation Agreement or Purchase Agreement required InfuCare to timely remove Roy as the PIC or specialty pharmacist, and the Agreements are fully integrated, such that Roy cannot rely upon any statements that implied InfuCare would remove him as the PIC or specialty pharmacist. (InfuCare Br. at 11-17.)

To state a breach of contract claim under New Jersey law, a party must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. *Frederico v. Home Depot*, 507

F.3d 188, 203 (3d Cir. 2007). The party bringing the claim "must also specifically identify the portions of the contract that were allegedly breached." *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012) (citing *Skypala v. Mortgage Electronic Registration Systems, Inc.*, 655 F. Supp. 2d 451, 459 (D.N.J. 2009) (dismissing breach of contract claim where "the Complaint does not identify the provisions Plaintiff asserts were breached")). Here, Roy has failed to identify portions of either the Separation Agreement or the Purchase Agreement that InfuCare allegedly breached. While Roy asserts that "[a] key provision of that Separation and one of the main reasons Dr. Roy entered into the Separation Agreement" was his removal as PIC or specialty pharmacist (ACC ¶ 67), Roy has not plead that this "key provision" was expressly incorporated into the Separation Agreement or Purchase Agreement.

Although Roy asserts that InfuCare may otherwise have implied that it would remove him as PIC or specialty pharmacist, both the Separation Agreement and Purchase Agreement are fully integrated contracts. The Separation Agreement provides,

> The Employee acknowledges that in deciding to sign this Agreement he has not relied on any promises, statements, representations or commitments, whether spoken or in writing, made to them by any Company representative, except for what is expressly stated in this Agreement. This Agreement constitutes the entire understanding and agreement between the Employee and the Company, whether spoken or written, relating to the matters described herein.

(ECF 175, Ex. C § 7.) Moreover, the Purchase Agreement provides: "This Agreement, including its recitals, represents the entire agreement and understanding of the Parties with respect to the subject matter hereof and supersedes any and all prior or contemporaneous understandings or agreements among the Parties, whether written or oral, with respect to the same or similar matters." (ECF 175, Ex. D § 11.11.) "Under the New Jersey parol evidence rule, '[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented

19

as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.'" *Norcom Rsch., LLC v. Net2Phone Glob. Servs., LLC*, No. 20-12592, 2021 WL 1153140, at *5 (D.N.J. Mar. 26, 2021), *aff'd*, No. 22-1243, 2023 WL 1098188 (3d Cir. Jan. 30, 2023) (quoting *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1235 (N.J. Super. Ct. App. Div. 1991) (quoting 3 CORBIN ON CONTRACTS § 573 (1960))). Accordingly, the Court cannot vary the writing of the Separation Agreement or Purchase Agreement to add an obligation to remove Roy as specialty pharmacist or PIC. Therefore, Roy has failed to state a breach of contract claim and Count One and Count Two are **DISMISSED without prejudice**.

### b. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Three)

In Count Three, Roy asserts that the Separation Agreement and Purchase Agreement contain an implied covenant of good faith and fair dealing that required InfuCare "to take immediate steps following the Separation to ensure and confirm that Dr. Roy was removed as InfuCare's PIC and/or specialty pharmacist with all state boards of pharmacy as well as all governmental and commercial payors." (ACC ¶ 75.) Roy alleges InfuCare's failure to do so violated the implied covenant of good faith and fair dealing and deprived him of his reasonable expectations and benefits under the Separation Agreement and Purchase Agreement. (*Id.* ¶¶ 76-77.) InfuCare argues that Roy fails to meet any of the elements required of a good faith and fair dealing claim. (InfuCare Br. at 18-20.)

"Under New Jersey law, every contract has an implied covenant of good faith and fair dealing." *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (citing *Wilson, et al. v. Amerada Hess Corp., et al.*, 773 A.2d 1121, 1126-27 (N.J. 2001)). A claim for breach of the

covenant of good faith and fair dealing, however, cannot proceed "unless the underlying conduct is distinct from that alleged in a corresponding breach of contract claim." *MZL Cap. Holdings, Inc. v. TD Bank, N.A.*, 734 F. App'x 101, 106 (3d Cir. 2018); *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 463 (D.N.J. 2020) ("The plaintiff cannot maintain a breach of the implied covenant of good faith and fair dealing claim that is duplicative of its breach of contract claim."). New Jersey law allows for an independent claim for breach of the implied covenant of good faith and fair dealing in three situations:

> (1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties contractual expectations; (2) to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance.

*Ohm Sys., Inc. v. Senergene Sols., LLC*, No. 23-1340, 2023 U.S. Dist. LEXIS 216317, at *6-7 (D.N.J. Dec. 5, 2023) (quoting *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 365 (D.N.J. 2006) (citing *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1077 (N.J. 2002))). Here, as required under Federal Rule of Civil Procedure 8(a), Roy does not plead additional facts that would distinguish his implied covenant claim from his breach of contract claims. Moreover, Roy does not assert that his claim falls into one of the three situations in which New Jersey law provides that an independent breach of the implied covenant of good faith and fair dealing is found. Accordingly, Count Three is **DISMISSED without prejudice**.

### c. Unjust Enrichment (Count Four)

In Count Four, Roy alleges that "InfuCare's failure to remove and/or ensure the removal of Roy as the company's PIC and/or specialty pharmacist has resulted in an economic benefit being conferred upon InfuCare to which it was not entitled." (ACC ¶ 82.) Roy alleges that once he

terminated his relationship with InfuCare, InfuCare was no longer permitted to rely on Roy as its PIC and/or specialty pharmacist in any jurisdiction or with any governmental or commercial payor. (*Id.* ¶ 79.) He further asserts that without a PIC or specialty pharmacist, InfuCare would not have been able to issue prescriptions and/or receive reimbursement from any third-party payor. (*Id.* ¶ 80.) InfuCare argues Roy's unjust enrichment claim must be dismissed because, among other reasons, he fails to plead the elements necessary to state such a claim. (InfuCare Br. at 20-23.)

"To establish a claim of unjust enrichment in New Jersey, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). For this claim, a plaintiff must "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 WL 2976839, at *26 (D.N.J. July 21, 2011); *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) ("liability will be imposed only if 'plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred.'" (citation omitted)).

In addition, "a claim for unjust enrichment requires a direct relationship between the parties." *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012); *Bedi v. BMW of N. Am., LLC*, No. 15-1898, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) ("[T]here must be a direct relationship to assert an unjust enrichment claim."). "[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J.

22

1998). Here, Roy alleges the benefit he conferred to InfuCare was his listed registration as the PIC or specialty pharmacist, which InfuCare relied upon even after the Separation. (ACC ¶¶ 78-83.) Roy asserts InfuCare's continued reliance on credentials allowed InfuCare to continue to operate in areas requiring a PIC or specialty pharmacist and receive payment or reimbursement for dispensing drugs and pharmaceutical products. (*Id.* ¶¶ 78-83.) Roy alleges that retention of the economic benefit from using his credentials is unjust because Roy separated from InfuCare and terminated the relationship between the parties. (*Id.*) At this stage, Roy states a claim for unjust enrichment, and InfuCare's motion to dismiss as to Count Four is **DENIED**.

### C.  InfuCare's Motion to Strike Roy's Counterclaims

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Importantly, motions to strike are generally disfavored and granted sparingly, such as when a defense is clearly insufficient regardless of any disputed issues of fact. *Tonka Corp.*, 836 F. Supp. at 217-18 (D.N.J. 1993). The Court exercises wide discretion in considering a Rule 12(f) motion to strike. *Id.* at 217. In the alternative to its motion to dismiss, InfuCare moved to strike Roy's Amended Answer and Counterclaims entirely or alternatively strike specified paragraphs. (InfuCare MTD at 24-27.) The Court considers this alternative motion and agrees that paragraph 28 and paragraphs 37 through 39 of Roy's Amended Counterclaims should be stricken. *See Ly Berditchev Corp. v. Truss Cosmetics Corp.*, No. 22-04242, 2023 U.S. Dist. LEXIS 173847, at *7-8 (D.N.J. Sep. 28, 2023) (considering motion to strike filed in the alternative to a motion to dismiss and striking portions of counterclaim). The allegations in those paragraphs are either impertinent or immaterial to Roy's counterclaims, which are based on InfuCare's continued reliance on Roy as the listed PIC or specialty pharmacist in certain states or

territories. The motion to strike will therefore be granted in the alternative, but only as to paragraph 28 and paragraphs 37 through 39 of Amended Counterclaims.

## IV.    CONCLUSION

For the reasons set forth above, Robin's motion to dismiss (ECF 186) is **GRANTED**. InfuCare's motion to dismiss (ECF 227) is **GRANTED in part and DENIED in part.** Counts One, Two, and Three of Roy's Amended Counterclaims are **DISMISSED without prejudice**. InfuCare's alternative motion to strike (ECF 227) is **GRANTED** as to counterclaims paragraph 28 and paragraphs 37 through 39 but is **DENIED** as to the remaining paragraphs. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:    Clerk
cc:      Cathy L. Waldor, U.S.M.J.
          Parties

24