**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INFUCARE RX, INC., *Plaintiff*, v. SAJAL ROY *et al*. *Defendants.* | Civil Action No. 22-6342 **OPINION & ORDER** July 17, 2025 |

**SEMPER**, District Judge.

Before the Court are the parties' *sua sponte* submissions regarding (1) whether the tolling provisions in the Restrictive Covenants Agreements ("RCA") and Schedule A apply, and (2) whether the parties waived their right to a jury trial. Plaintiff InfuCare Rx, Inc. ("Plaintiff" or "InfuCare") submitted a brief in support of tolling and the inapplicability of the jury waiver provision. (ECF 342, "Pl.") Defendants Sajal Roy ("Roy"), Roy Investment Group, LLC, and Pharma Fusion LLC (collectively, "Roy Defendants" or "Defendants") submitted a brief in support of the enforceability of the jury trial waiver and arguing that the tolling provisions do not apply. (ECF 339, "Def. Br.")[1] The Court reviewed the parties' submissions and held oral argument on June 17, 2025. (ECF 396.) For the reasons set forth below, the Court will enforce the jury waiver provision pursuant to Section 7(b) of the RCA and will reserve on the issue of tolling pending the resolution of trial.

---

[1] Defendants Harold E. Cannon and South Walton Pharmacy LLC d/b/a Santa Rosa Pharmacy (collectively, the "Santa Rosa Defendants") joined in the arguments of the Roy Defendants' brief on tolling and the enforceability of the jury waiver provision. (ECF 341.)

1

## I. THE PARTIES' CONTENTIONS

On March 14, 2025, this Court directed the parties to brief two issues: (1) whether the tolling provisions in the RCA and Schedule A apply and (2) whether pursuant to Section 7(b) of the RCA the parties waived the right to a jury trial. (ECF 336.) Plaintiff contends that the jury waiver provision is inapplicable in the present dispute, and in the alternative asks this Court to empanel a jury to decide non-waived claims while proceeding with a bench trial on claims subject to the jury waiver provision of the RCA. (Pl. Br. at 19 n. 3.) Plaintiff does not contest that the jury waiver provision at issue was entered into on a knowing and voluntary basis. Specifically, Plaintiff argues that Counts XIII (Misappropriation of Trade Secrets under the Defend Trade Secrets Act) and XIV (Misappropriation of Trade Secrets under New Jersey law) do not arise from a contractual relationship between the parties, and that Counts VIII-XIII relating to Tortious Interference exist independent of the jury waiver provision in the RCA. (Pl. Br. at 13.)

Plaintiff also argues that Roy's counterclaims, currently subject to InfuCare's two pending motions to dismiss, fall outside the scope of the RCA's jury waiver provision and, at minimum, InfuCare "is entitled to a jury trial on those claims." (*Id.* at 17.) InfuCare concedes that "bifurcating the case between jury and bench proceedings may create substantial inefficiencies, potential for inconsistent factual findings, and unnecessary complexity" and "InfuCare would be willing to reassess its request for a jury trial on all claims and consider consenting to a bench trial for all matters." (*Id.* at 19 n. 3.) Defendants oppose a jury trial and argue that the jury waiver provision is effective for all of InfuCare's claims. (Def. Br. at 20.)

The parties also make several arguments related to the enforceability of the tolling provisions in the RCA and Schedule A. InfuCare claims that the present litigation as well as Roy's alleged violations of the RCA and Schedule A toll both agreements pursuant to Paragraph 6 of

2

Schedule A and Section 7(m) of the RCA. The relevant provision in Schedule A states: "The restrictive covenant time periods set forth above shall be tolled during any period of noncompliance by you and/or in the event of litigation until the issuance of an injunction or entry of final judgment in favor of the Company, whichever is longer." (ECF 334-2, "Schedule A" ¶ 6.) Section 7(m) of the RCA states: "if Roy violated any covenant in Section 3, the Restricted Period shall automatically be extended for a period equal to the period during which Roy was in violation of such covenant, as determined by a final, non appealable judicial order." (334-1, "RCA" ¶ 7(m).)

Defendants make several arguments regarding the tolling provisions in both the Schedule A and RCA.[2] First, Defendants argue that Plaintiff should be judicially estopped from claiming a protectable interest in the enforcement of the restrictive covenants, because InfuCare previously argued in a separate case, when it was a defendant, that the plaintiff could not establish a misappropriate of trade secrets claim against InfuCare. (Def. Br. at 5-6 (citing *Biomatrix v. John Sowerssby*, No. 18-61310, S.D. Fla. 2018).) Defendants also contend that the tolling provisions are unenforceable because they have no time limit and are thus unlawfully indefinite (*id.* at 10-11) and ask this Court to "'blue pencil' the covenants to reflect that the time period necessary to protect a 'legitimate protectable interest' has long expired." (*Id.* at 12.)

On June 17, 2025, this Court held oral argument on the enforceability of the tolling provisions and heard from the parties on their various positions.

## II. DISCUSSION

### A. Jury Trial Waiver

---

[2] In their brief, Defendants make additional arguments as to why InfuCare should not be allowed to enforce the restrictive covenants, including that (1) InfuCare's claims of confidentiality are too vague (Def. Br. at 12); (2) that there is no evidence InfuCare sought to keep the information at issue here confidential (*id.*); and (3) to the extent Roy did have any proprietary information, it is "outdated and stale" (*id.* at 14). These arguments may be reserved for trial.

The right to a jury trial is a fundamental right guaranteed by the Seventh Amendment of the United States Constitution and governed by federal law. *Simler v. Conner*, 372 U.S. 221, 221–222 (1963). However, this right can be waived by contract if the waiver is knowing and voluntary. *Brookhart v. Janis*, 384 U.S. 1, 4–5 (1966); *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007). As a general matter, courts construe jury trial waivers narrowly and "indulge every reasonable presumption against waiver." *Collins v. Government of Virgin Islands*, 366 F.2d 279, 284 (3d Cir. 1966). Nevertheless, courts routinely enforce jury trial waivers. *See e.g.*, *Travelodge Hotels, Inc. v. Huber Hotels, LLC*, No. 19-2057, 2023 WL 6284896, at *4 (D.N.J. Sept. 27, 2023); *Triboro, Inc. v. Siren, Inc.*, No. 05-997, 2006 WL 2990365, at *6 (D.N.J. Oct. 18, 2006); *In re DaimlerChrysler AG Sec. Litig.*, No. 00-993-JJF, 2003 WL 22769051, at *2 (D. Del. Nov. 19, 2003), *aff'd sub nom*. *Tracinda Corp.*, 502 F.3d at 222.

In order to determine whether a party has knowingly and voluntarily waived its right to jury trial, federal courts employ a test that examines the following four factors: (i) the existence of a gross disparity in bargaining power between the parties; (ii) the business or professional experience of the party opposing the waiver; (iii) whether the clause containing the waiver was conspicuous; and (iv) whether the opposing party had an opportunity to negotiate terms of the contract. *Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*, No. 06-4449, 2007 WL 2473832, at *4 (D.N.J. Aug. 24, 2007). When these factors balance in support of finding a waiver of a jury demand, courts in this District have enforced contractual waivers. *See e.g.*, *Patch of Land Lending, LLC v. RR Baldwin Nwk, LLC*, No. 16-9188, 2017 WL 11745061, at *2 (D.N.J. Aug. 15, 2017); *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, No. 12-0521, 2013 WL 12147688, *3 (D.N.J. Aug. 14, 2013); *Kennedy Funding, Inc. v. Lion's Gate Dev., LLC*, No. 05-4741, 2006 WL

2038496, at *4 (D.N.J. July 19, 2006). Finally, courts in this District have held that the party seeking to enforce a jury waiver provision bears the burden of establishing that the waiver was knowing and voluntary. *See Wells Fargo Bank*, 2013 WL 12147688, at *2 ("Most courts find that the party seeking to enforce the jury waiver has the burden to show the waiver is valid.").

Examining the jury trial waiver provision of the RCA in light of these principles and the facts and circumstances of this case, the Court finds that Plaintiff waived its right to a jury trial. In pertinent part, Section 7(b) of the RCA provides:

> <u>WAIVER OF JURY TRIAL.</u> EACH OF THE PARTIES IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BETWEEN THE PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.

The language of Section 7(b) is plain and unambiguous. This clause is the <u>only</u> provision in the RCA which appears in all capital letters. Courts in this District have determined that jury waiver provisions in "entirely capital letters" are conspicuous. *Joseph Oat Holdings*, 2007 WL 2473832 at *4. Thus, the Court is satisfied that the waiver was conspicuous. Because both parties are sophisticated actors and were represented by counsel at the time the RCA was signed (Def. Br. at 18), there was no gross disparity in bargaining power. InfuCare, the party opposing the waiver, is a business with substantial experience in drafting contracts and employment agreements. The Court concludes that InfuCare knowingly and voluntarily agreed to the contractual jury waiver.[3]

A contractual jury waiver is only valid for claims that arise out of the contract. *Joseph*

---

[3] *See Triboro, Inc. v. Siren, Inc.*, No. 05-997, 2006 WL 2990365, at *6 (D.N.J. Oct. 18, 2006) (finding jury waiver valid when there was "no evidence of any gross disparity in bargaining power" between the parties who "were both experienced businesses men"; there was "no indication that the agreement was not negotiated"; and "the waiver [wa]s in bold type and quite conspicuous").

5

*Oat Holdings, Inc.*, 2007 WL 2473832, at *4. The contractual jury waiver provision here states that the parties waive their right to a jury trial "in **any action or proceeding between the parties arising out of or relating to** this agreement **and the transactions contemplated** by this agreement." (RCA ¶ 7(b) (emphasis added).) Each of InfuCare's claims arise out of or relate to the RCA or any transaction contemplated by it. The RCA details Roy's obligations during and after his employment/affiliation with InfuCare, as well as contemplated future employment or competition elsewhere, and specifically references the Purchase Agreement between the parties. (*Id.* ¶¶ 1, 3(a)-(c).) Therefore, the jury trial waiver is enforceable as to Plaintiff's claims. *See Wells Fargo Bank*, 2013 WL 12147688, at *3-4 (holding that the jury waiver provision applied to tortious interference claims because they "arose out of" relationship between the parties despite the argument that those acts were "not within the four corners of the contractual relationship").

InfuCare argues that Roy's counterclaims exist "wholly outside the contractual framework" and are thus "distinct from any obligation created by the 2018 RCA and cannot logically be construed as 'arising out of or relating to' that agreement." (Pl. Br. at 16-17.) InfuCare filed a motion to dismiss Roy's counterclaims on December 20, 2024 (ECF 308) and on May 14, 2025 (ECF 376) respectively, both of which are currently pending before this Court. The Court declines Plaintiff's request while InfuCare's motions to dismiss Roy's counterclaims are pending. If appropriate, Plaintiff should raise this issue after the outstanding motions are decided and the trial date nears. *See Wells Fargo Bank*, 2013 WL 12147688, at *4 (denying defendant's request for the court to find that some of its counterclaims were triable by jury while a motion to dismiss those counterclaims and a motion for summary judgment were pending).

### B. Tolling Provisions

To begin, the Court rejects Plaintiff's argument that the present litigation tolls the

restrictive covenant period set forth in Schedule A. (*See* Pl. Br. at 3.) The parties signed the Schedule A on November 30, 2018, which by its own terms expired 18 months "following the end of [Roy's] employment" with InfuCare. (Schedule A ¶¶ 3-4.) Plaintiff's Third Amended Complaint states that Roy "voluntarily tendered his resignation from InfuCare on January 18, 2021, effective March 4, 2021." (ECF 334, "TAC" ¶ 132.) Indeed, Roy's Separation Agreement with InfuCare, dated April 15, 2021, states that Roy's resignation "was accepted and became effective as of March 4, 2021 ('the **Separation Date**')" and that "[f]ollowing the Separation Date, [Roy] has not represented himself as being an employee, officer, or agent of [InfuCare] for any purpose." (ECF 335, "Ex. C" ¶ 1.) Thus, Schedule A expired on September 5, 2022—18 months after Roy left InfuCare and over one month before this litigation commenced. (*See* ECF 1, "Compl.") Plaintiff's argument that Schedule A expired in October 2022 is unavailing.

InfuCare also argues that Roy's non-compliance tolls both the Schedule A and RCA. (*See* Pl. Br. at 4.) The parties do not dispute that the RCA expired on November 30, 2023. (*See* TAC ¶ 198; Def. Br. at 2 n. 3.) The dispute is whether the alleged non-compliance by Roy tolled the RCA pursuant to Section 7(m). Because InfuCare alleges Roy's violations of the RCA related to Ethical Factor RX began on November 30, 2018 (Pl. Br. at 5), and his violations related to Santa Rosa Pharmacy began on April 26, 2021 (*id.* at 6), the question of tolling applies only to Defendant Pharma Fusion, which Plaintiff alleges Roy formed and began operating on June 11, 2024, after the RCA expired. (TAC ¶¶ 26-27.)

The Court will reserve on the issue of whether Roy's non-compliance tolls the RCA for any conduct after November 30, 2023 until the parties have had an opportunity to proffer evidence of Roy's alleged non-compliance at trial. The determination of whether Roy's violations of the RCA toll his obligations under that agreement will be made after the parties have presented

7

factual findings to this Court.[4]

### III. CONCLUSION

For the reasons set forth above, the Court will enforce the jury waiver provision in Section 7(b) the RCA and will reserve on the issue of tolling pending the presentation of evidence at trial.

**IT IS** on this 17th day of July 2025,

**ORDERED** that the jury waiver provision pursuant to Section 7(b) of the RCA is enforced; and it is further

**ORDERED** that trial in this matter will proceed as a bench trial before the Honorable Jamel K. Semper commencing on September 29, 2025.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Cathy L. Waldor, U.S.M.J.
  Parties

---

[4] The Court declines to judicially estop Plaintiff from claiming a protectable interest in the enforcement of the RCA's tolling provisions. (*See* Def. Br. at 5.) Judicial estoppel "is an 'extraordinary remedy' that should be employed only when a party's inconsistent behavior would otherwise result in a miscarriage of justice." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001) (quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 365 (3d Cir. 1996)). To invoke judicial estoppel, the Third Circuit requires the moving party to show three elements: : (1) "the party to be estopped must have taken two positions that are irreconcilably inconsistent;" (2) the party changed his or her position "in bad faith, i.e., in a culpable manner threatening to the court's authority"; and (3) the application of the doctrine must be "tailored to address the harm identified" and there must be no lesser sanction which "would adequately remedy the damage done by the litigant's misconduct." *Id.* at 779-780 (citations omitted). Defendants have not established the three elements required of judicial estoppel. The positions taken by InfuCare here and in the *Biomatrix* litigation are not irreconcilably inconsistent. Defendants have also not demonstrated bad faith. InfuCare made its previous arguments in *Biomatrix* to a jury during trial, not to a court or agency, and "judicial estoppel may not be used to punish litigants for how they treat other litigants or third parties; its only legitimate purpose is to remedy an affront to the court's integrity." *Id.* at 785 (emphasis in original). Finally, barring the application of tolling is not tailored to address the harm of the allegedly inapposite positions Defendants take issue with, which are unrelated to tolling.